N. H. BOYNTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9145. Promulgated May 14, 1928.

*Newton D. Baker, Esq., Amos Burt Thompson, Esq.,* and *David H. Gaskill, Esq.,* for the petitioner.
*George G. Witter, Esq.,* for the respondent.
*Francis P. Farquhar, Esq.,* as *amicus curiae.*

1354

1356.

1360

## OPINION.

ARUNDELL: The question involved is the proper treatment to be accorded the income derived from property placed with the Cleveland Trust Co. under the terms of the instrument quoted in the findings of fact, and particularly whether the petitioner is entitled to deduct from his gross income claimed losses on the sale of securities which were held by the Cleveland Trust Co. under that agreement.

A consideration of the agreement discloses that all income was reserved exclusively to the-petitioner; he had not merely the power

to revoke but the power to modify the agreement; the duty of returning the property for taxation was expressly imposed on him and also the duty of insuring the buildings; he reserved the right to sell all real estate; title to stocks remained in his name and he retained and exercised the voting power and the dividends were paid direct to him; he was compelled to see to the payment of all insurance premiums on policies deposited with the trust company; the trust company had no right to borrow money or to compromise claims without petitioner's approval and it had practically no power to sell or purchase property without petitioner's consent. Nor did the many powers expressly reserved to petitioner lie dormant, for the petitioner in fact exercised repeatedly many of the rights reserved by him in his agreement with the Cleveland Trust Co. Indeed the particular securities on which the loss is here claimed were sold by petitioner without consultation with the Cleveland Trust Co. through petitioner's broker and the securities were thereafter delivered to the broker by the trust company on petitioner's order. It is contended that this action on his part served to constitute, as to the particular securities, a revocation. Whether this be true or not is not necessary to decide as we do not base our conclusion on that ground.

Stated simply, as we view it, the question for us to decide is whether or not the instrument signed by petitioner and the Cleveland Trust Co. constituted a trust within the meaning of section 219 of the Revenue Acts of 1918 and 1921. Petitioner urges that the instrument constituted nothing more than an agency, and our attention is called to section 8617 of the General Code of Ohio (which was in effect at the time the agreement was made), which reads as follows:

All deeds of gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making them, shall be void and of no effect.

The case of *Worthington* v. *Redkey*, 86 O. S. 128, is cited as authority for the proposition that the attempted creation of a revocable trust results in the creation of an agency only. Though petitioner's argument in this connection is persuasive, we do not believe it necessary for us to decide whether the transaction constituted in law an agency and the argument is passed without further comment.

Since these proceedings were taken under submission there has been decided the case of *Stoddard* v. *Eaton*, decided by the United States District Court for the District of Connecticut, 22 Fed. (2d) 184. The facts in the *Stoddard* case bear such a close parallel to those in the case at bar as to make the court's opinion especially deserving of close consideration.

Stoddard was a donor of a revocable trust and also its beneficiary. He claimed the right to deduct from his gross income losses from the sale of securities which were held by the trustee. It appears that Stoddard, like Boynton, at all times retained control of the securities held by the trustees and directed and controlled their management, and under the trust agreement had power to retake the legal title at will. In spite of the large discretionary powers granted, no sale or other disposition of securities or of their proceeds was ever made or suggested except upon the direct order of Stoddard. In considering the contentions made by Stoddard the court stated:

The contention of the plaintiff is that the so-called "Trust Agreements" worked no severance of the trusteed securities from the corpus of the plaintiff's property and that these securities, whether in the hands of the trustees or not, were always his own assets, and, therefore, that the losses sustained on their sale were proper items of deduction from his gross income. He says that the verbal form of the transaction does not necessarily control the construction to be placed upon it; that the environing conditions—the motivation—the reactions of the parties to the situation thus integrated and to its developing phases—all have a significance which the law must evaluate before the genuine relation of the transactions to the Income Tax Act may be ascertained. With this suggestion, stated in these general terms, I am disposed to agree. For, we are not here concerned with the rights of contracting parties who may evoke a rule of estoppel to prevent the change of a comma in the written bond, nor are there innocent third parties involved who have relied upon a title or upon an authority expressed in writing.

\* \* \* \* \* \* \*

It may well be asked,—If the plaintiff intended to deliver nothing but a general power of attorney, why didn't he employ the usual form? The explanation afforded seems cogent enough. A general power of attorney as ordinarily expressed, would, in order to be effective, either have to be too broad, or, if it were to be limited to specific property, it would be in need of intermittent amendment. This would be simple enough if it were not for the plaintiff's protracted absences in the south during the winter months.

That the equivocal formula accepted by the plaintiff has plunged him into more difficulties than those he avoided, seems to be the result of a shifting canon of interpretation in the Bureau of Internal Revenue. At one time the Bureau adopted the view that the income of a revocable trust under which the donor added or withdrew property at his will, was income of the donor regardless of the identity of the *cestui que trust*. If the plaintiff's views were the same he might well fail to be meticulous as to the form into which he cast his transaction.

After all the word "trust" as used in Section 219 of the Revenue Act of 1918, can hardly have been intended to comprehend every instance in which a trust is recognized in equity. A trust *ex maleficio*, a resulting trust or a constructive trust are examples of trusts which do not fit into the frame of the statute. A trust, as therein understood, is not only an express trust, but a genuine trust transaction. A revenue statute does not address itself to fictions.

\* \* \* \* \* \* \*

The defendant apparently relies upon *Baltzell* v. *Mitchell*, 3 Fed. (2d) 428 (5 Am. Fed. Tax Rep. 5230). It does not appear that that case was one involving

a revocable trust. Furthermore, it was not the donor of the trust corpus who was the plaintiff, but the beneficiary of the income. There was no identification of the settler and *cestui*, as is the case in the present instance. Furthermore, there was no question concerning the reality of the trust, and that is an important and material element in the case before me.

The reasoning in the Stoddard case seems to us to be sound. In every essential way, both by the terms of the instrument and in actual practice, Boynton reserved ownership and control of the property. To say that the income in question was that of the fiduciary rather than that of Boynton would be to let the form prevail over the substance. This we do not believe Congress intended. After a careful consideration of the terms of the agreement executed by petitioner, we are led to the conclusion that it did not serve to create a trust within the meaning of section 219 of the Revenue Acts of 1918 and 1921.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*

MILLIKEN did not participate.

MORRIS concurs in the result.

GREEN, dissenting: The prevailing opinion apparently sustains the petitioner's argument, as set forth in his brief, "that regardless of whether the relationship between Boynton and the Trust Company may be technically described as a trust, the property was at all times subject to Boynton's control to the same extent as if no trust had been created; that no other beneficiary acquired any greater right by virtue of the trust agreement than he would have had if named in the will, and that therefore, regarding substance, not form, the property was not held in trust within the meaning of the law, but must be treated for income tax purposes as if the so-called trust agreement had never been executed." In addition to this the petitioner contends that the agreement does not in law create a trust. The respondent urges with great emphasis that the agreement creates a revocable trust and that such trusts have been definitely recognized by the Federal taxing statutes.

As I construe the pleadings, two broad issues are presented for consideration. The first is whether a certain agreement, set forth verbatim in our findings of fact, creates a trust within the meaning of the Federal statutes the income from which should be taxed in accordance with the provisions of section 219 of the Revenue Act of 1918 and the Revenue Act of 1921, or whether it, in fact, creates nothing more than an agency with the result that the income received by the agent should be included in the gross income of the principal.

If it is held that by such contract a trust, as that term is used in the taxing statutes, is actually created, it being conceded by both parties that such trust, if it exists, is a revocable trust, the question is whether the tax on the income thereof is to be paid by the trustee or the income thereof included in the gross income of the grantor with the result that the tax thereon be paid by him. The second of these questions involves the consideration of several rather important principles applicable to the taxation of the income of estates. It is upon these two broad issues that the petitioner has concentrated his efforts.

The briefs of the parties indicate beyond doubt that I have not misconceived the issues.

I am unable to agree wholly with the summary of the trust instrument as set forth in the opinion. At least it should be pointed out that it permits the trustee to sell, lease, transfer or exchange all or any part of the trust property, and to invest monies regardless of the usual laws restricting trusts, without obtaining the consent or written approval of the settler. It provides that the trustee must have the written approval of the donor to loan or borrow money or to compromise, compound or adjust claims. There are absolutely no restrictions upon the power of the trustee to sell or lease or purchase any and all properties, except securities, and as to the latter it merely requires trustee to obtain written approval of settler whenever practicable to do so, but provides that it will not be necessary for a buyer to ascertain whether such approval has been obtained.

The trust instrument makes the ordinary income payable quarterly to the settler, but leaves to the absolute discretion of the trustee the question of whether any of the principal fund shall be paid to the settler. And of extreme importance is the provision of the instrument giving the trustee the right—

To determine by a majority vote of its Board of Directors, whose decision shall be conclusive, as to the competency of the donor, whenever the question of his competency to act hereunder shall become material.

At the time the returns were filed, Office Decisions 621 and 676 had been issued. These are quoted hereinafter, and in substance provided that "The income of a revocable trust be included in the gross income of the grantor."

The returns were prepared in accordance with the above mentioned Office Decisions. Subsequently on July 24, 1922, Law Opinion 1102, which specifically revoked Office Decisions 621 and 676, was promulgated.

As pointed out above, the first question is whether under the taxing statutes the agreement created a trust or an agency. The petitioner contends that under the laws of the State of Ohio such an

agreement creates an agency and not a trust, and in support of this position it cites section 8617 of the General Code of Ohio (which was in effect at the time the agreement was made), which reads as follows:

All deeds of gift and conveyance of goods and chattels, made in trust to the use of the person or persons making them, shall be void and of no effect.

It cites several cases, among them that of *Worthington* v. *Redkey*, 86 Oh. St. 128, which appear to hold that the attempted creation of a revocable trust results in the creation of an agency only.

As I view this question, the fact that the statutes of the State of Ohio and the decisions of the courts of that State may make this agreement either wholly invalid or require that it be construed to be merely a contract of agency, is not conclusive when it comes to the matter of determining the liability for Federal income taxes on the income of the property which is the subject matter of the agreement. I am fully aware that this view is, to say the least, an exception to two commonly accepted principles of law. The first is that the rights of an owner of property in and to that property and the income therefrom, are governed by the law of the State. The second is that under ordinary circumstances the tax on income falls upon the owner thereof.

Due to the various causes with which we have no concern, there have grown up in several States, by reason of statutes or decisions, laws governing the ownership of property and the income therefrom, which are unusual and in some instances unique. For example, under the laws of one State men may be partners, while under the laws of many other States they are members of an association of a type which is subject to Federal income and excess-profits taxes as if it were a corporation. This results from the peculiar rule of property existing in the one State. To accept such a rule as controlling would result in Federal taxation contrary to the intent of the taxing statute. This is the precise situation with which the Supreme Court was confronted in the case of *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110. In that case Mr. Justice Brandeis set forth very succinctly the issues involved and the laws of the State relating to the property. For the purposes of this discussion the material portions of the opinion are as follows:

The Burk-Waggoner Association contends that what is called its property and income were in law the property and income of its members; that ownership, receipt, and segregation are essential elements of income, which Congress cannot affect;

\*     \*     \*     \*     \*     \*     \*

\* \* \* and that thus what is called the income of the association can be taxed only to the partners upon their undistributed shares of the partnership profits,

\*     \*     \*     \*     \*     \*     \*

\* \* \* The association further contends that, \* \* \* it cannot tax the income of the association, for that would make out of a business group, whose property under the law of the state is owned by the members individually, an entity capable of owning property and receiving income;

\*        \*        \*        \*        \*        \*        \*

\* \* \* The term partnership as used in these sections obviously refers only to ordinary partnerships. Unincorporated joint-stock associations, although technically partnerships under the law of many states, are not in common parlance referred to as such. They have usually a fixed capital stock divided into shares represented by certificates transferable only upon the books of the company, manage their affairs by a board of directors and executive officers and conduct their business in the general form and mode of procedure of a corporation. Because of this resemblance in form and effectiveness, these business organizations are subjected by the act to these taxes as corporations.

\*        \*        \*        \*        \*        \*        \*

It is true that Congress cannot convert into a corporation an organization which by the laws of its state is deemed to be a partnership. But nothing in the constitution precludes Congress from taxing as a corporation an association which, although unincorporated, transacts its business as if it were incorporated. The power of Congress so to tax associations is not affected by the fact that, under the law of a particular state, the association cannot hold title to property, or that its shareholders are individually liable for the association's debts, or that it is not recognized as a legal entity. Neither the conception of unincorporated associations prevailing under a local law, nor the relation under that law of the association to its shareholders, nor their relation to each other and to outsiders, is of legal significance as bearing upon the power of Congress to determine how and at what rate the income of the joint enterprise shall be taxed.

In this decision the Supreme Court determined the relationship between the income and the individual, not on the basis of the State law but upon the basis of the Federal statute. They hold that the *Burk-Waggoner Co.* was an association for purposes of taxation even though it was a partnership under the laws of Texas. They hold that income was taxable to the association when as a matter of the law of Texas it was the property of the individual.

Following a similar line of reasoning, the Federal courts have declined to follow the State law in determining whether a certain contract constituted a sale or a lease. See *Henry L. Berg et al.*, 6 B. T. A. 1287, in which the controlling cases are reviewed. The same line of reasoning was applied to a wholly different situation by the Court of Claims in *Mary S. Aldridge, Executor*, v. *United States*, 64 Ct. Cls. 424.

This line of reason is carried forward by Mr. Justice Holmes in the case of *United States* v. *Robbins*, 269 U. S. 315, in which he says:

But the question before us is with regard to the power and intent of the Revenue Act of February 24, 1919 \* \* \*. *Even if we are wrong as to the law of California and assume that the wife had an interest in the community income that Congress could tax if so minded, it does not follow that Congress*

*could not tax the husband for the whole.* Although restricted in the matter of gifts, etc., he alone has the disposition of the fund. He may spend it substantially as he chooses, and if he wastes it in debauchery the wife has no redress. See *Garrozi* v. *Dastas*, 204 U. S. 64, 27 S. Ct. 224, 51 L. Ed. 369. His liability for his wife's support comes from a different source and exists whether there is community property or not. That he may be taxed for such a fund seems to us to need no argument. The same and further considerations lead to the conclusion that it was intended to tax him for the whole. For not only should he who has all the power bear the burden, and not only is the husband the most obvious target for the shaft, but the fund is not liable to be taken for the wife's, Civil Code, Sec. 167, so that the remedy for her failure to pay might be hard to find. The reasons for holding him are at least as strong as those for holding trustees in the cases where they are liable under the law. Section 219 (Com. St. Ann. Supp. 1919, Sec. 6336 1/8 ii). See Regulations 65, art. 341. (Italics supplied.)

To those who would say that Mr. Justice Holmes' conclusions in the *Robbins* case have no application here, I point to the fact that he there said: " The reasons for holding him are at least as strong as those for holding trustees in the cases where they are liable under the law. Section 219 (Com. St. Ann. Supp. 1919, sec. 6336 1/8 ii). See Regulations 65, art. 341."

The article of the regulations referred to reads as follows:

Art. 341. *Estates and trusts.*—In general, the income of a trust for the taxable year which is to be distributed to the beneficiaries must be returned by and will be taxed to the respective beneficiaries, but the income of a trust which is to be accumulated or held for future distribution, whether consisting of ordinary income or gain from the sale of assets included in the corpus of the trust, must be returned by and will be taxed to the trustee. The exception to this general rule is with respect to the income of a trust revocable by the grantor, and the income of a trust which may be distributed to the grantor or used to pay the premiums upon policies of insurance upon his life, which income, whether or not distributed, must be returned by and will be taxed to the grantor of the trust. (See article 347.)

See section 225 and articles 421 and 423 with reference to fiduciary returns, and article 294 with reference to deductions.

See also *Zemurray* v. *United States*, 64 Ct. Cls. 657.

It is unnecessary to discuss or attempt to define the word " trust " as it is used in the Revenue Acts of 1918 and 1921. It was intended to have its usual and ordinary meaning. Giving that word its usual and ordinary meaning, I am convinced that the agreement here under consideration is a trust within the meaning of the term as used in the taxing statutes just as the partnership in the *Burk-Waggoner* case was held to be an association within the meaning of the taxing statute, and for the same fundamental reason. I likewise believe that the income therefrom is to be taxed in accordance with provisions of the statutes relating to the taxation of the income of trusts even though, if the State law were followed, it

might be held that the agreement created merely an agency and that the income derived from the property involved was, as a matter of ownership, the property of the principal in the agency contract, that is to say, the petitioner herein. If we so held we would be but following the principles set forth in the *Burk-Waggoner* case and the *Robbins* case.

The next broad question is how and to whom the income of this trust shall be taxed. This involves a consideration of the Revenue Acts of 1918 and 1921 since the years 1920 and 1921 are before us. The two acts as regards all questions here involved are in substance the same.

The material parts of section 219 of the Revenue Act of 1921 read as follows:

SEC. 219. (a) That the tax imposed by sections 210 and 211 shall apply to the income of estates or of any kind of property held in trust, including—

\*     \*     \*     \*     \*     \*     \*

(4) Income which is to be distributed to the beneficiaries periodically, whether or not at regular intervals, and the income collected by a guardian of an infant to be held or distributed as the court may direct.

(b) The fiduciary shall be responsible for making the return of income for the estate or trust for which he acts. The net income of the estate or trust shall be computed in the same manner and on the same basis as provided in section 212, \* \* \* In cases in which there is any income of the class described in paragraph (4) of subdivision (a) of this section the fiduciary shall include in the return a statement of the income of the estate or trust which, pursuant to the instrument or order governing the distribution, is distributable to each beneficiary, whether or not distributed before the close of the taxable year for which the return is made.

(c) In cases under paragraphs (1), (2), or (3) of subdivision (a) or in any other case within subdivision (a) of this section except paragraph (4) thereof the tax shall be imposed upon the net income of the estate or trust and shall be paid by the fiduciary, except that in determining the net income of the estate of any deceased person during the period of administration or settlement there may be deducted the amount of any income properly paid or credited to any legatee, heir, or other beneficiary. In such cases the estate or trust shall, for the purpose of the normal tax, be allowed the same credits as are allowed to single persons under section 216.

(d) In cases under paragraph (4) of subdivision (a), and in the case of any income of an estate during the period of administration or settlement permitted by subdivision (c) to be deducted from the net income upon which tax is to be paid by the fiduciary, the tax shall not be paid by the fiduciary, but there shall be included in computing the net income of each beneficiary that part of the income of the estate or trust for its taxable year which, pursuant to the instrument or order governing the distribution, is distributable to such beneficiary, whether distributed or not, or, if his taxable year is different from that of the estate or trust, then there shall be included in computing his net income his distributive share of the income of the estate or trust for its taxable year ending within the taxable year of the beneficiary. In such cases the beneficiary shall, for the purpose of the normal tax, be allowed as credits, in addition to the credits allowed to him under section 216, his pro-

portionate share of such amounts specified in subdivisions (a) and (b) of section 216 as are received by the estate or trust.

. The petitioner points out that until the issuance of Law Opinion 1102, on July 4, 1922, the Bureau of Internal Revenue, as evidenced by the various regulations and rulings, consistently took the position that in the case of a revocable trust the income therefrom should be taxed to the grantor. He points out that thereafter and at its next session, Congress enacted into law the substance of the regulations and rulings. He proved that he relied upon the regulations and rulings in effect at the time he entered into the trust agreement. He contends, and it is upon this contention that he places his main reliance, that Law Opinion 1102 is wholly wrong or, if right, wholly inapplicable to this case.

Article 29 of Regulations 33, relating to the Acts of 1916 and 1917, promulgated January 2, 1918, provides that:

A deed of trust must be absolute so far as the conveyance of title is concerned and irrevocable by the donor, otherwise the income from the property in question will accrue to the donor and must be accounted for by him.

The last sentence of article 341, Regulations 45, relating to the Revenue Act of 1918, approved by the Secretary of the Treasury and published April 21, 1919, provided:

The income of a revocable trust must be included in the gross income of the grantor.

This regulation was repeated in the revision of the regulations promulgated January 28, 1921. In 1920, the Treasury Department published the following office decision confirming and further interpreting article 341:

O. D. 621, Cumulative Bulletin No. 3 (July–December, 1920), p. 202:

The income of a revocable trust must be included in the gross income of the grantor. The position of the grantor with respect to the payment of tax on such income is the same as if the trust had not been created, and the same principles are applicable in determining the amount of taxable income.

The trustee under a revocable trust is required to file a return on Form 1041, revised, in accordance with Section 225 of the Revenue Act of 1918 and article 421 of Regulations 45, showing the grantor as the beneficiary under the trust. The trustee must also file a return of information on Form 1099, revised, as provided in section 256 of the Act upon which should be entered the name and address of the grantor in whose return the income should be included.

O. D. 676, Cumulative Bulletin No. 3 (July–December, 1920), p. 202:

Where a declaration of trust provides that during the life of the donor he may indicate the manner in which the trustee shall exercise the powers conferred by the trust agreement; that the donor shall have a voice in deter-

mining the amount of net income to be distributed to the beneficiaries; and that the estate created and the interests vested thereunder shall be subject to revocation by the donor at any time, in whole or in part, it is held that the amount of income received by the beneficiaries is in the nature of a gift, and that the trustee merely acts as agent for the donor. The income of the trust should therefore be included in the gross income of the donor in accordance with article 341, of Regulations 45. The trustee is required to file a return for the trust on Form 1041, revised, showing the grantor as beneficiary under the trust and the grantor should include the net income of the trust in gross income in his individual return under the item of income from fiduciaries.

The above quoted regulations were in full force and effect at the time the Revenue Act of 1921 was passed and approved on November 23, 1921. Article 341 of Regulations 62 is practically a restatement of article 341 of Regulations 45, but the last sentence, " the income of a revocable trust must be included in the gross income of the grantor," is omitted. On July 24, 1922, L. O. 1102 was promulgated by the Treasury Department. I. T. 1589 expressly states that L. O. 1102 revoked O. D. 621 and O. D. 676, and the respondent is herein attempting to apply L. O. 1102 retroactively.

On June 2, 1924, the Revenue Act of 1924 was passed and approved and section 219 contained the following new and additional provisions:

(g) Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor.

(h) Where any part of the income of a trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him, or where any part of the income of a trust is or may be applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in paragraph (10) of subdivision (a) of section 214), such part of the income of the trust shall be included in computing the net income of the grantor.

The intention of Congress in 1921 to adopt the executive construction of the 1918 Act which prevailed at the time the 1921 Act was passed is established by the fact that after the Treasury Department had changed such construction Congress in its next revision of the Revenue Act, on June 2, 1924, incorporated in the law specific provision which required the grantor of a revocable trust to include the income in his personal return. The intent of Congress is clearly expressed in the hearings before the committees. At page 59 of the Committee on Ways and Means report, it is stated:

Section 219. This section has been rewritten in order to secure clarity and to prevent the evasion of taxes by means of estates and trusts.

It is provided in the section that in the case of a trust where the trustee has the discretion to distribute or not the income is taxed to the beneficiary if distributed and to the trustee if not distributed.

Subdivision (g) of this section provides that where the grantor of a trust reserves the right to change the trust in favor of himself the income is taxed to the grantor.

Subdivision (h) of this section provides that the income of a trust which may be distributed to the grantor or which may be used for the payment of premiums upon policies of insurance on his life shall be included in the gross income of the grantor. Trusts have been used to evade taxes by means of provisions allowing the distribution of the income to the grantor or its use for his benefit. The purpose of this subdivision of the bill is to stop this evasion.

and in the Senate Finance Committee report, at page 20:

Section 219: This section has been rewritten in order to secure clarity and to prevent the evasion of taxes by means of estates and trusts.

(1) It is provided in the section that in the case of a trust where the trustee has the discretion to distribute or not, the income is taxed to the beneficiary if distributed and to the trustee if not distributed.

(2) Paragraph (g) of this section provides that where the grantor of a trust reserves the right to change the trust in favor of himself the income is taxed to the grantor.

The creation of a revocable trust constitutes nothing but an assignment of the right to receive future income. Since such an assignment does not operate to increase the taxable income of the assignor, the creation of a revocable trust should not so operate, but the income of such a trust should be included in the income of the grantor. The bill so provides.

Subdivision (h) of this section provides that the income of a trust which may be distributed to the grantor or which may be used for the payment of premiums upon policies of insurance on his life shall be included in the gross income of the grantor. Trusts have been used to evade taxes by means of provisions allowing the distribution of the income to the grantor or its use for his benefit. The purpose of this subdivision of the bill is to stop this evasion.

and in the Finance Committee report, at page 25:

Section 219: This section has been rewritten in order to secure clarity and to prevent the evasion of taxes by means of estates and trusts.

(1) It is provided in the section that in the case of a trust where the trustee has the discretion to distribute or not, the income is taxed to the beneficiary if distributed and to the trustee if not distributed. The wording of subdivision (b) has been changed (1) to except from its provisions specifically subdivisions (g) and (h), which lay down special rules in lieu of the general provisions of subdivision (b); (2) to permit as an additional deduction that part of the gross income which, pursuant to the terms of the will or deed, is to be used exclusively for the prevention of cruelty to children or animals, since contributions by individuals to organizations for these purposes are deductible under section 214(a)(10).

(2) Paragraph (g) of this section provides that where the grantor of a trust reserves the right to change the trust in favor of himself the income is taxed to the grantor. The subdivision of the House bill has been rewritten in order that there shall not be taxed to the grantor the income of a trust as to which the grantor has a power of revocation subject, however, to a condition which has not happened.

The creation of a revocable trust constitutes nothing but an assignment of the right to receive future income. Since such an assignment does not operate to increase the taxable income of the assignor, the creation of a revocable trust should not so operate, but the income of such a trust should be included in the income of the grantor. The bill so provides.

(3) Subdivision (h) of this section provides that the income of a trust which may be distributed to the grantor or which may be used for the payment of premiums upon policies of insurance on his life shall be included in the gross income of the grantor. Trusts have been used to evade taxes by means of provisions allowing the distribution of the income to the grantor or its use for his benefit. The purpose of this subdivision of the bill is to stop this evasion.

The provisions of the House bill have been altered to exclude from taxation to the grantor of a trust income thereof used to pay premiums on insurance policies which are irrevocably payable to the benevolent organizations described in section 214 (a) (10). A trust of this kind is a proper method of providing for a gift to such organizations, and since the income is being used for these benevolent purposes rather than for the grantor's personal benefit it should not be taxed to him.

Thus I find that the Bureau of Internal Revenue, from the date of the issuance of Regulations 33, applicable to the Revenue Acts of 1916 and 1917, down to July 24, 1922, at which time Law Opinion 1102 was issued, steadfastly adhered to its rule that the income of a revocable trust was taxable to the grantor or creator of the trust. I find Law Opinion 1102 announcing a contrary rule. I find Congress in 1924 enacting a statute which expressly provided that income of a revocable trust shall be included in the income of the grantor.

Courts have frequently been called upon to determine the weight to be given to executive constructions of statutes. Each reenactment of a statute adds weight to the executive construction of the previous statutes. The authorities for this proposition have been so often set forth by the courts and this Board that it is unnecessary to do so again. And where, as in this case, there is a succession of rulings, a departure therefrom and an immediate action by Congress to restore to the law the principle enunciated in the rulings, I would have no hesitancy in holding that the original departmental construction correctly states the law, and I am therefore of the opinion that under the Revenue Acts of 1918 and 1921 the income of a revocable trust should be included in the income of the grantor and the tax thereon paid by him.

Mr. Justice Holmes in the *Robbins* case, cited section 219 of the Revenue Act of 1918 and an article of Regulations 65 relating to the Revenue Act of 1924. This regulation, among other things, says:

The exception to this general rule is with respect to the income of a trust revocable by the grantor, and the income of a trust which may be distributed to the grantor or used to pay the premiums upon policies of insurance upon his life, which income, whether or not distributed, must be returned by and will be taxed to the grantor of the trust.

1374

Whether or not any significance is to be attached to the citation of section 219 of the Revenue Act of 1918 followed by the citation of an article of the regulations relating to section 219 of the Revenue Act of 1924, it is clear that each, separately, was relied upon as a basis for the conclusion there reached.

My conclusion with respect to the liability for tax on the income of a revocable trust is in conflict with none of our decisions relating to the taxation of the income of trusts except that in *Appeal of Henry Stoddard*, 3 B. T. A. 79. In none of the others was there a revocable trust.

The respondent permitted the petitioner to return as his income a part of the income of this trust but refused to permit him to deduct its losses apparently upon the theory that the gain or loss resulting to the trust from the sale or other disposition of capital assets should be returned in a return made by the trust and the tax on the net income therefrom paid by the fiduciary.

This method of reporting the income of this revocable trust was wholly wrong. The statute and the regulations require the computation of the net income of such trust and the addition of the amount thereof to the income of the grantor or distributee. This method should be followed here. In both of the years before us the trust had net income so that we are not called upon to determine whether, if the trust had a net loss, such loss might be deducted by the grantor or distributee.

The prevailing opinion relies upon the *Stoddard* case as decided by the Federal court. In the discussion of that case the prevailing opinion states " Stoddard was the donor of a revocable trust and also its beneficiary." If this be true, then the case should have been decided in accordance with the provisions of section 219, as in fact I believe it to have been, for nowhere in the opinion am I able to find any definite statement to the contrary and many things therein stated indicate that the court regarded the instrument as a revocable trust, and as such within section 219.

To hold that instruments of the type here under consideration are revocable trusts and that as such they come within the provisions of section 219 of the various acts and that the income therefrom should be taxed to the grantor, in accordance with the earlier ruling of the Department and the later acts of Congress, would establish a complete uniformity of rule starting with the 1916 Act and continuing at least through the Act of 1926. Such uniformity of rule is in itself of sufficient worth to warrant the decision I propose.

To hold that a revocable trust is not within section 219 is to expressly override Congress and this, it appears to me, is what has been done in this case.

LITTLETON, SMITH, and LOVE concur in this dissent.

TRAMMELL, dissenting: I concur with the dissenting opinion to the extent that it holds that the instrument involved created a trust, but disagree as to the effect of the power of revocation reserved.