THE CLEVELAND TRUST COMPANY, EXECUTOR OF THE ESTATE OF E. C. HENN, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

DORA V. HENN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 13227, 26919. Promulgated September 24, 1931.

*David A. Gaskill, Esq.*, and *Grover Higgins, Esq.*, for the petitioners.

*Arthur Carnduff, Esq.*, for the respondent.

## OPINION.

VAN FOSSAN: The first issue in these proceedings is whether or not the agreement executed by E. C. and Dora V. Henn on April 30, 1917, constitutes a trust within the meaning of section 219 of the Revenue Act of 1918. If the document is construed not to be such a trust, then the losses resulting from the sales of property deposited with the Cleveland Trust Company, the trustee named in that instrument, are deductible from the gross incomes of the petitioner, Dora V. Henn and E. C. Henn, whose estate is now represented by the said Cleveland Trust Company as executor.

The facts in this case and the phraseology of most pertinent provisions of the so-called trust agreement are strikingly similar to those set forth in *N. H. Boynton*, 11 B. T. A. 1352. E. C. Henn exercised the powers reserved to him and his co-maker in the so-called trust agreement to a greater extent than did Boynton. The ownership and control of the property nominally included in the corpus of the trust estate were lodged in Henn and his wife as fully as if no agreement had been executed. See *Selah Chamberlain et al.*, 19 B. T. A. 126; *Stoddard B. Eaton*, 22 Fed. (2d) 184. Under the principles laid down in *Corliss* v. *Bowers*, 281 U. S. 376, taxation relates to the actual command over and benefits arising from the property taxed. In the case at bar the settlors had full power to control both the corpus of the estate and the income therefrom to the extent of revesting themselves of the corpus and the income therefrom by withdrawing either the corpus or the income as they saw fit. Only a formal notice of such withdrawal, called a "revocation," was necessary in order to

142

comply with the terms of the trust agreement. *Grace Whitney Hoff*, 20 B. T. A. 86. That the practical operation of the trust agreement, as well as its theoretical construction, served to lodge in the settlors all control and other incidents of ownership is conclusively shown by the fact that it became imperative to execute a new instrument in order to give the trustee the exclusive right and authority to manage the trust property. Under the original agreement the trustee had no power to conserve and protect the estate, it could not object to the so-called "revocation" notices of withdrawals of cash and other assets, and it had no right to select what securities or other property should be added to the trust fund. Furthermore, the Supreme Court of Ohio in *Union Trust Co.* v. *Hawkins*, 161 N. E. 545, held that an alleged trust agreement, similar to that of April 30, 1917, did not constitute a valid and binding trust, but was merely an appointment of the trustee as the managing agent of the settlor, acting under her direction.

We are of the opinion that the agreement of April 30, 1917, did not create a trust within the meaning of section 219 of the Revenue Act of 1918.

The respondent urges that the execution of the trust agreement by two persons who own individually the property constituting the corpus of the trust estate, and the consequent requirement of a joint revocation, transforms the agreement from one of agency to a trust instrument within the purview of the statute. He asserts that thus the interest of each settlor was adverse to that of the other and that, therefore, each was deprived of individual control. He admits that if the trust properties had been jointly owned at the time they were placed in the trust the principles laid down in the *Boynton* case would govern.

In view of our decision that the agreement under consideration was one of mere agency and not a trust instrument, it is immaterial that there were two persons therein. It is a well settled principle of law that joint principals may designate a common agent. Mechem's Law of Agency, vol. 1, p. 132; Tiffany on Agency, p. 194. See *George L. Craig*, 7 B. T. A. 504. In the case at bar the principals had a community of interest in the successful conduct of the activities which the agent was appointed to carry on. Necessarily, such identity of purpose connotes a convergency rather than a divergency of interest. The principals could terminate the agency agreement at any time by their joint action. A termination of the agreement would only restore to them the form of ownership, the substance of which they continued to enjoy during the period covered by the agreement.

The rule laid down in *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, holding that since the power to revoke or alter was dependent

upon the consent of the one entitled to the beneficial, and, consequently, adverse interest, the trust had passed from the control of the settlor, obviously does not apply under the facts in this case. Therefore, the petitioners may deduct from their respective incomes the loss resulting in 1920 from the sales of property forming a part of the corpus of the so-called trust fund deposited with the Cleveland Trust Company in accordance with the provisions of the agreement of April 30, 1917.

The second issue is whether there was a gain or loss resulting from the sale of 1,500 shares of the capital stock of the National Acme Company. This issue rests upon a proper identification of the stock of the National Acme Company purchased in 1919 and sold in 1920. The petitioners have shown clearly that the shares of capital stock of the National Acme Company sold in 1920 for $39,694.50 were the same shares purchased by them in 1919 and represented by certificates Nos. 1545 to 1554, inclusive, and Nos. 1608 to 1612, inclusive. for an aggregate price of $55,221.75. At the time of purchase the certificates were deposited with the trustee and became a part of the corpus of the trust fund. They were withdrawn therefrom under the usual " revocation " notices and sold in December, 1920. By thus identifying the share so bought and sold, and the cost and sale price thereof, the petitioners have established a basis for the calculation of gain or loss in the transaction. Article 39, Regulations 45, does not apply. *Howbert* v. *Penrose*, 38 Fed. (2d) 577; *Towne* v. *McElligott*, 274 Fed. 960. Cf. *Albert W. Finlay*, 17 B. T. A. 828; *John A. Snyder*, 20 B. T. A. 778; *Burdett Stryker*, 21 B. T. A. 561. The loss of $15,527.25 sustained in 1920 upon the sale of the said 1,500 shares of stock of the National Acme Company is allowed.

Reviewed by the Board.

*Decision will be entered under Rule 50.*